IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LEASA ANN HARRIS,

                Plaintiff,

v.                                                     OPINION and ORDER

KILOLO KIJAKAZI, Acting Commissioner of the Social       20-cv-639-jdp
Security Administration,

                Defendant.[1]

---

Plaintiff Leasa Ann Harris seeks judicial review of a final decision of defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, finding Harris not disabled within the meaning of the Social Security Act. Harris contends that remand is warranted because administrative law judge (ALJ) Michael Hellman erred by: (1) failing to account for her anxiety and depression; (2) improperly evaluating the opinion of a nurse practitioner; and (3) failing to account for the severity of her bilateral carpal tunnel syndrome. For reasons discussed below, the court will affirm the ALJ's decision.

ANALYSIS

Harris applied for benefits in 2018, alleging that she was disabled as of March 9, 2018. R. 13. The ALJ found that Harris suffered from the following severe impairments: Charcot-Marie-Tooth disease; bilateral carpal tunnel syndrome, status-post left carpal tunnel release in June 2017; and lumbar facet arthropathy. R. 15.[2] He ascribed to Harris the residual functional

---

[1] The court has updated the caption in accordance with Federal Rule of Civil Procedure 25(d).

[2] Record cites are to the administrative transcript, located at Dkt. 9.

capacity (RFC) to perform sedentary work, with the additional limitation to only frequent bilateral fingering and handling. R. 19. Based on the testimony of a vocational expert, the ALJ found that Harris was not disabled because she could perform her past relevant work as an admitting clerk and a receptionist. R. 25. The Appeals Council denied her request for review. R. 1–3. Harris now appeals to this court.

On appeal, the court's role is to determine whether the ALJ's decision is supported by substantial evidence, meaning that the court looks to the administrative record and asks "whether it contains sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The standard is not high and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* But the ALJ's decision must identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

A. **Mental limitations**

Harris alleged disability based on anxiety and depression. R. 15. At step three of the ALJ's analysis, he rated the overall severity of Harris's anxiety and depression in four broad areas of mental functioning, as required by the regulations. R. 16–18; 20 C.F.R. § 404.1520. He concluded that Harris had no limitation in "understanding, remembering, or applying information," but that she had mild limitations in "interacting with others," "concentrating, persisting, or maintaining pace," and "adapting and managing herself." R. 16–18. The ALJ didn't incorporate any mental functioning limitations into Harris's RFC.

Harris contends that the ALJ ignored her mild mental limitations when formulating her RFC. She contends that an ALJ must include all assessed limitations, even non-severe ones, in a claimant's RFC. That is incorrect. This court has repeatedly explained that an ALJ's finding

2

that a claimant has a mental limitation is only a generalized assessment of a claimant's abilities in a broad category of mental functioning; it is not a specific limitation that the ALJ must explicitly address in the RFC. *See, e.g., Gloege v. Saul*, No. 19-cv-250-jdp, 2019 WL 6001659, at *2–3 (W.D. Wis. Nov. 14, 2019). What matters is whether the RFC adequately accounts for a claimant's psychological symptoms. *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019). The burden is on Harris to identify additional specific restrictions supported by the record that the ALJ should have included but did not. *Id.; see also Martin v. Saul*, No. 19-cv-795-jdp, 2020 WL 2847526, at *2 (W.D. Wis. June 2, 2020). Harris only refers vaguely to "the limitations the ALJ found credible" and identifies no evidence of specific mental restrictions that the ALJ failed to include.

Harris contends that the ALJ erred by failing to incorporate Harris's mild mental limitations in the RFC because her past work is classified as semi-skilled, which is mentally demanding and can be complex. 20 C.F.R. § 404.1568(b). She contends that the ALJ should have explained how she could perform her past jobs as an admitting clerk or a receptionist. But the ALJ considered Harris's mental limitations and determined that they did not warrant additional restrictions in the RFC. R. 16–18 and R. 23–25. Harris offers no specific evidence to support her contention that she could not perform semi-skilled work or her past jobs, and she doesn't challenge the ALJ's reasons for concluding that her mild mental limitations did not warrant additional restrictions. Harris is not entitled to remand on this basis.

## B. Andersen's opinion

The ALJ dedicated several pages of his decision to the opinion of nurse practitioner Sarah Andersen, who began treating Harris in April 2017. R. 23–25. Andersen completed a general medical-source statement in August 2018 in which she responded to questions about

3

Harris's physical and mental abilities. Andersen's report is the only medical opinion in the record. The ALJ found that some of her findings were persuasive but that others were not. For example, he accepted her sit/stand assessment but rejected her lifting and carrying assessment for a more restrictive limitation. R. 24. Harris contends that the ALJ erred in evaluating Andersen's opinions related to her arm and hand use and her mental functioning.

### 1. Harris's arm and hand use

Andersen's opinion included several findings related to Harris's ability to use her arms and hands. Andersen stated that Harris could "occasionally" perform firm and fine grasping with her left and right hands. R. 328. Andersen selected "yes" where asked if Harris: (1) could perform repetitive activities involving hands, arms, and upper extremities; (2) had good use of both hands and fingers for bilateral manual dexterity; (3) had good use of hands and fingers for repetitive hand-finger actions; and (4) could manipulate, handle, and work with small objects with both hands. R. 328–329. Andersen checked a box indicating that Harris's symptoms impaired her ability to perform activities of daily living to a "moderate" degree. R. 327.

The ALJ discounted Andersen's opinion concerning Harris's grasping capability and provided two reasons. R. 24. First, the ALJ said that it was inconsistent with Harris's ability to paint, sew, cook, clean, shop, and do laundry. Second, the ALJ said that the opinion was inconsistent with Andersen's other findings that Harris had good use of her hands and fingers, could perform repetitive activities with her hands, and work well with small objects. The ALJ also rejected Andersen's opinion that Harris was moderately impaired in carrying out her daily activities. He again cited her cooking, cleaning, shopping, and doing laundry, and he pointed

to medical progress notes stating that Harris "had sufficient strength in her bilateral upper extremities (BUEs) to perform activities of living." R. 24.

Harris contends that the ALJ ignored evidence that her ability to carry out recreational and daily living activities was significantly limited. Harris makes a fair point: the ALJ overlooked Harris's statements that she struggled with her activities and hobbies. For example, the ALJ cited Harris's ability to cook, but he didn't address her comments in a function report that it had become difficult for her to stand for long periods or handle a knife, or that she only prepared simple frozen meals and sandwiches. R. 199; 218 (Harris function reports). The ALJ also cited Harris's ability to paint despite her statements that her painting had become limited and that she could not hold a paintbrush as well as she used to. R. 201.

But Harris's overall argument fails because the ALJ provided a second independently sufficient reason to discount Andersen's opinion: Andersen's finding that Harris had a limited ability to grasp was inconsistent with Andersen's own opinion that Harris had good use of her hands and fingers, could carry out repetitive activities with her hands, and handle small objects. An ALJ may discount a medical opinion if it is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability. *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004). Harris failed to address this line of reasoning or even acknowledge it. Harris has not demonstrated that the ALJ's assessment of this part of Andersen's opinion warrants remand.

2. **Harris's mental functioning**

Andersen opined that Harris had a good ability to understand, remember, and carry out detailed and complex job instructions. R. 330. She also stated that Harris's symptoms moderately impaired her ability to maintain concentration, persistence, and pace. R. 329.

The ALJ found Andersen's opinion that Harris could understand, remember, and carry out tasks to be persuasive but he rejected Andersen's finding of a moderate impairment in concentration, persistence, and pace. R. 24. He cited several reasons for discounting Andersen's concentration, persistence, and pace assessment. One reason was that it was "inconsistent with her finding that the claimant is able to understand, remember, and carry out all tasks." R. 25. Harris contends that the ALJ improperly conflated Harris's ability to understand, remember, and carry out tasks with her ability to maintain concentration, persistence, and pace. She argues that the ALJ was required to assess both areas of mental functioning separately.

I agree that it makes littles sense to find that Harris could maintain concentration, persistence, and pace simply because she could understand, remember, and carry out tasks. But Harris fails to acknowledge that the ALJ also addressed each limitation separately. The ALJ explained that there was no evidence that Harris lacked the ability to learn, recall, or use information to perform work activities and noted that Harris did not testify to having any trouble understanding, remembering, or applying information. R. 17. When discussing concentration, persistence, and pace, the ALJ noted that Harris was able to follow along during the hearing and answer all questions, and that her ability to paint, teach herself to sew, cook, clean, shop and do laundry demonstrates that she could focus her attention and stay on task. R. 18; 25.

The ALJ provided other reasons for rejecting Andersen's opinion that Harris does not address. He noted that Andersen's concentration, persistence, and pace opinion was not supported by her own observations. Andersen provided statements in her report that conflict with a moderate concentration, persistence, and pace impairment: Harris could concentrate well for two-hour periods, avoid distraction well, and complete a normal workday without

psychological interruptions. R. 331. Harris hasn't shown that the ALJ erred in evaluating Andersen's opinion about her mental capacities.

## C. Frequent bilateral fingering and handling restriction

To address Harris's carpal tunnel syndrome, the ALJ limited Harris to only frequent, rather than constant, bilateral fingering and handling. R. 19. "Frequent" means from one-third to two-thirds of the workday. SSR 83-10, 1983 WL 31251, at *5–6.

Harris contends that a finding of severe carpal tunnel syndrome necessarily requires a greater handling and fingering restriction. She argues that a limitation to frequent hand and arm use "is essentially no limitation at all." Dkt. 12, at 12. But Harris cites no authority to suggest that severe carpal tunnel syndrome requires a greater restriction than the ALJ ascribed to her. To the contrary, ALJs often include frequent handling and fingering limitations in the RFCs of claimants with severe carpal tunnel syndrome. *See, e.g.*, *Gibbons v. Saul*, 801 F. App'x 411, 415 (7th Cir. 2020); *Burton v. Astrue*, No. 4:08-cv-216-seb-wgh, 2010 WL 987227, at *1 (S.D. Ind. Mar. 12, 2010); *Heath v. Saul*, No. 19-cv-335-rlm, 2020 WL 3287221, at *1 (N.D. Ind. June 18, 2020).

Harris next contends that the ALJ failed to consider several pieces of evidence in assessing her handling and fingering capacity:

- Harris had carpal tunnel release surgery on her left hand, which did not alleviate her right hand carpal tunnel syndrome;
- Harris testified that the surgery relieved pain but did not improve mobility or sensation;
- Harris told her occupational therapist that all activities annoyed her because she could only perform them in short spurts due to her carpal tunnel symptoms;
- Harris had joint laxity in her fingers; and

7

- Harris's physical therapist wrote in a progress note that Harris "clearly has a moderately severe case of carpal tunnel syndrome."

Dkt. 12, at 12–13.

The problem with Harris's argument is that none of the evidence she cites demonstrates why she was unable to use her hands for up to two-thirds of a workday. She contends that if the ALJ had restricted her to occasional fingering and handling, she would have been precluded from all sedentary work. But she hasn't demonstrated why an "occasional" handling and fingering restriction would have accounted for her limitations but a "frequent" restriction did not.

The ALJ acknowledged evidence of Harris's handling and fingering limitations, including her testimony that she had difficulty picking up objects, buttoning shirts, putting earrings on, opening jars, picking up pens, holding coins, and tying her shoelaces, and that her surgery did not restore mobility. R. 20. But he also explained that Harris was not wearing wrist braces or gloves for carpal tunnel syndrome at her hearing, that medical tests showed full range of motion in her wrists, and that she could garden a year after her surgery. He cited Harris's comment to her physical therapist that she was trying to use her hands more by painting and teaching herself how to sew, and her occupational therapist's finding that Harris had sufficient arm and hand strength to perform activities of daily living, including cooking, cleaning, shopping, and laundry. And the ALJ relied on the findings of the state agency consultants who concluded that Harris could engage in frequent handling and fingering. R. 23. The ALJ identified evidence that supported his conclusion that Harris could engage in frequent handling and fingering, and Harris identifies no evidence that requires a different conclusion. This issue doesn't require remand.

8

ORDER

IT IS ORDERED that the decision of defendant Kilolo Kijakazi, Acting Commissioner of Social Security, denying plaintiff Leasa Ann Harris's application for disability benefits is AFFIRMED and Harris's appeal is DISMISSED. The clerk of court is directed to enter judgment in favor of the defendant and close this case.

Entered July 23, 2021.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge